UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:10-CR-62-TLS |
| | ) | |
| CHARLES A. BOYCE | ) | |

**OPINION AND ORDER**

Before the Court is a Motion to Suppress [ECF No. 19], filed on September 21, 2010. The Defendant, Charles A. Boyce, asks the Court to exclude from evidence drugs that were found in his sweatshirt pocket and inside his car. The Government maintains that the Defendant's car was lawfully stopped and that the Defendant was searched incident to arrest, and that the search of the vehicle was justified and lawful pursuant to the automobile exception and an inventory search incident to towing the car. For the reasons stated in this Opinion and Order, the Defendant's Motion to Suppress is DENIED.

**BACKGROUND**

The Indictment in this cause charges that the Defendant, on or about November 27, 2007, knowingly and intentionally possessed with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). The charges stem from a traffic stop conducted by Fort Wayne Police Department (FWPD) Officer Marc DeShaies on November 27 during which he discovered drugs on the Defendant's person and inside his vehicle. The Defendant has moved to suppress and exclude from the Government's case in chief any evidence that Officer DeShaies seized during the stop.

On November 4 and 8, 2010, the Court conducted an evidentiary hearing. The Defendant

was present in the courtroom with his attorney, Thomas O'Malley. The Government was represented by AUSA Anthony Gellar. The Court received evidence and heard testimony from Officer DeShaies, FWPD Officer Chad Squires, and FWPD K-9 Officer John Drummer. The parties also filed a Stipulation [ECF No. 25], setting forth the "additional transcripts of hearing testimony and previously admitted exhibits in 1:07-CR-100, proposed for use by the parties in briefing and for consideration by the Court in deciding the merits of the Defendant's Motion to Suppress." (Stipulation, ECF No. 25.)[1]

On January 7, 2011, the Defendant filed his Brief in Support of Motion to Suppress [ECF No. 29]. On February 9, the Government filed a Brief in Opposition to Motion to Suppress [ECFNo. 31], and on February 23, the Defendant filed a Reply [ECF No. 32].

## STATEMENT OF FACTS

On November 27, 2007, Officer DeShaies was patrolling in the southeast quadrant of Fort Wayne. He was waiting at a red stoplight at the intersection of Pontiac and Hanna Streets in his marked patrol car when he saw a silver Ford Taurus waiting at the same light facing him on the opposite side of the intersection. Officer DeShaies paid particular attention to the Taurus because, just one day earlier, the police received a report that local gang members drove a silver Ford Taurus past a house, waiving firearms, and threatening to shoot it up. One of the occupants of the car had been identified, but the others were unknown. The FWPD had broadcast an

---

[1] The Defendant was previously indicted under Cause Number 1:07-CR-100 for the same charges that he faces in this case. Before Judge William C. Lee dismissed without prejudice the Indictment in Cause Number 1:07-CR-100 in the wake of the Supreme Court's decision in *United States v. Bloate*, 130 S. Ct. 1345 (2010), he had heard and decided a motion to suppress evidence and motion to reconsider the motion to suppress. It is these motions that generated the testimony and exhibits that the parties stipulate may be used in consideration of the Motion to Suppress that is the subject of this Opinion and Order.

attempt to locate (ATL) the car. When the traffic light turned green, the Taurus and Officer DeShaies's car passed each other in the intersection. As they passed, Officer DeShaies saw the driver look his way, and then look down and away. Officer DeShaies's police training involved observing and interpreting body language and non-verbal cues with the understanding that they make up ninety percent of communication and that police are required to assess situations with people in a short period of time. Officer DeShaies's daily experiences also confirmed that people look away in attempt to shield their face, even unconsciously, when they do not want police to see them. Office DeShaies immediately turned around with the intention to follow the Taurus and gather more information about the car and its registered owner to determine if it was related to the ATL from the previous day.

As Officer DeShaies turned around, the Taurus began to accelerate and to gain distance and speed as it traveled east on Pontiac. Officer DeShaies accelerated to at least 50 miles per hour, dodging traffic, but could not gain ground on the Taurus. The posted speed limit was 30 miles per hour. Based on this, Officer DeShaies concluded that the driver was speeding. The Taurus turned south onto Anthony Boulevard, approached an intersection at Rudisill, and turned again. The Taurus make quick and successive turns onto Lillie, Baxter, and back onto Anthony.

By this time, Officer DeShaies had come close enough to the Taurus to read the license plate. A license plate inquiry revealed that Charles Boyce was the registered owner of the car. Officer DeShaies then used Boyce's name as a query to gain further information. His request revealed that Boyce had an active warrant for his arrest from 1990 that had been issued in

California.² Officer DeShaies already believed that, based on the rapid acceleration and quick turns, the driver was trying to evade him, and the warrant appeared to be a possible reason for the evasiveness.

Officer DeShaies initiated his red and blue emergency lights, which activated his in-car camera.³ The Taurus stopped on Rudisill. Officer DeShaies, who was the only law enforcement officer on the scene, approached the vehicle. The Defendant was the only occupant of the car. Officer DeShaies asked the Defendant to produce his driver's license and registration. The Defendant began pressing his hand against the front, center, area of his waist and questioning the validity of the stop. He eventually produced an Indiana identification card showing that he was Charles Boyce. When Officer DeShaies asked the Defendant about his suspicious patting motion, the Defendant held his hands up in a surrender position. Officer DeShaies asked the Defendant to step out of the car. The Defendant complied and Officer DeShaies told him to turn around because he was going to handcuff him and detain him for the out-of-state warrant.

Officer DeShaies began the process of confirming the warrant and any extradition of the warrant with the issuing agency. When law enforcement officers discover an out-of-state warrant, they confirm from the issuing jurisdiction that the warrant is still valid and whether the issuing agency wants to extradite the person. He contacted Fort Wayne dispatch to request this confirmation, which is performed through the Indiana Data and Communications System

---

² It is not clear from the record whether Officer DeShaies was aware of the age of the warrant when he conducted the traffic stop, or whether he learned of the date later.

³ During this time, Officer DeShaies's in-car video system was experiencing problems activating, recording, and burning segments to DVD. Although this stop was recorded on the hard drive, technicians were unable to locate it on any DVD for use in this case. Due to a computer software malfunction, the overwrite cycle on the hard drive had already erased the recording on the hard drive.

(IDACS), which is a statewide database linked to the National Crime Information Center (NCIC) where dispatchers can run warrant checks and communicate with other jurisdictions. Officer DeShaies experience was that the confirmation process could take twenty minutes to an hour. The Defendant stated that he knew about the drug warrant, but that California did not want to extradite him. Officer DeShaies said that he did not know the Defendant and needed to confirm the warrant for himself. Dispatch will only act on a confirmation request for an out-of-state warrant if the police have the person to whom the warrant applies in custody.

Before Officer DeShaies placed the Defendant in the back of his squad car, he wanted to make sure he did not have any weapons or means of escape, such as handcuff keys. As Officer DeShaies felt the outside of the Defendant's clothing, he felt a large, bulky item in the front, hand-warmer style pocket of the Defendant's hooded sweatshirt. He was not able to tell from feeling the item whether it was a weapon or not. He removed the item, which was a balled up nylon cap. When Officer DeShaies placed the cap on the top of the car, a small rock-like substance that Officer DeShaies believed was crack cocaine fell out. Officer DeShaies put the Defendant in the back of his squad car and began the process of confirming the warrant, but had difficulty obtaining basic information from the Defendant for his paperwork.

Because the Defendant was going to be further detained on the warrant and for the drugs, FWPD policy dictated that the car be secured, inventoried, and towed. Officer DeShaies, who had been joined by Officer Chad Squires, began an inventory of the items inside the car. Officer DeShaies saw a bag tucked in the seam of the back seat and pulled at it. When he pulled the bag, the bench seat moved and Officer DeShaies discovered that it was not attached. He lifted the loose seat up, looked beneath it, and saw what he believed was a large quantity of drugs. Officer

DeShaies and Officer Squires completed the inventory and called for narcotics detective to come to the scene.

Another officer transported the Defendant to the Allen County Jail on charges related to the drugs and the warrant. By the time the Defendant arrived at lockup, the confirmation for the warrant had been sent to the Jail and printed, and a notation for the confirmation had been added to Officer DeShaies's computer log. The confirmation stated that the arrest warrant was valid and that the Los Angeles Police Department would extradite pending approval from California prosecutors in the morning. Because the "pending approval" language was not an unambiguous extradition confirmation, an employee at Allen County Lockup was not sure the Jail could hold the Defendant on the warrant without further clarification, and would only hold him on the drug charges. However, based upon the written hit confirmation, a detainer was issued and entered into the NCIC system the next day. A few days later, on November 30, the Allen County Sheriff's Department sent another confirmation request and received notification that, although the warrant remained active, California no longer wanted to extradite the Defendant. Based upon this information, the detainer was released.

Sometime after Officer DeShaies arrived at the Allen County Jail, he noticed for the first time a notation in the miscellaneous field of the warrant check results on his computer screen that he took to mean that California did not want to extradite the Defendant on the warrant. The notation was a message text from the database, which indicated "NO EX OUTSIDE CA DOJ." Officer DeShaies testified that, because an agency can change what it decides to do with a warrant, officers are required to confirm extradition of warrants with the issuing jurisdiction regardless of what is indicated in the miscellaneous field. An Allen County Sheriff's Department

data control specialist responsible for administering warrant in the NCIC local system also testified that even when geographical limitations are listed in NCIC, the issuing jurisdiction does not always follow the limitation and has the option and discretion to modify such limitations in response to a hit confirmation request.

**DISCUSSION**

The Defendant does not contend that Officer DeShaies violated his constitutional rights when he stopped his vehicle. The Defendant's challenge is limited to the patdown search, which he states led to the subsequent search of his car. The Defendant argues that Officer DeShaies's patdown exceeded the boundaries of a permissible *Terry* frisk because Officer DeShaies was not justified in removing the nylon cap from the Defendant's pocket when he did not immediately recognize it as a weapon or contraband. The Government analyzes Officer DeShaies search as one incident to arrest, asserting that the officer had probable cause to arrest the Defendant on the outstanding arrest warrant. The distinction the parties make between a protective weapons search and a search incident to arrest is important; "a person stopped on probable cause may be searched fully, while a person stopped on reasonable suspicion may be patted down but not fully searched." *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002). "[P]olice are entitled to search the persons and possessions of everyone arrested on probable cause, with or without any reason to suspect that the person is armed or carrying contraband." *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004) (citing *United States v. Florida*, 414 U.S. 260 (1973) & *United States v. Robinson*, 414 U.S. 218 (1973)).

The Defendant argues that, according to Officer DeShaies's own statements, he was not

arrested on the warrant but was merely detained. Officer DeShaies's testimony included both arrest and detention in reference to his custody of the Defendant. For example, when he was asked to explain the purpose of the traffic stop, he stated: "Confirm the identity of the driver and to, if it was, in fact, the registered owner, to arrest him on the warrant." (11-8-10 Hr'g Tr. 7.) Officer DeShaies testified that once the Defendant handed him his ID card, he believed him to be Charles Boyce and "was detaining him for the warrant." (11-4-10 Hr'g Tr. 94; *see also id.* 52, 98 (referencing detention); *id.* 58–59 (explaining that he took measures to tow the car because the "driver was being detained, was going to be arrested at least for the cocaine and the warrant".) Regardless of Officer DeShaies's characterization of the custody, probable cause under the Fourth Amendment is analyzed under an objective standard. Therefore, the label that an officer uses to refer to his custody of an individual does not change whether there was probable cause to believe that the individual committed a crime. *See Jackson*, 377 F.3d at 717 (holding that an officer's statement that the defendant was not "under arrest" but was just being "detained" did not alter the Fourth Amendment analysis regarding the lawfulness of the search as one incident to arrest); *United States v. Garcia*, 376 F.3d 648, 650 (7th Cir. 2004).

Here, probable cause to arrest the Defendant was supplied by an active arrest warrant and Officer DeShaies's confirmation of the Defendant's identity. Police have probable cause to arrest an individual if there is a valid arrest warrant outstanding on that person. *United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004); *United States v. Marshall*, 70 F.3d 68, 69 (7th Cir. 1996) ("The felony arrest warrant gave the police a basis for arresting" the individual named in the warrant.). A warrant is proof that a neutral judicial officer has already reviewed the facts and made a determination that probable cause exists to arrest. *See Steagald v. United States*, 451 U.S.

8

204, 212 (1981). Although the warrant was issued in another jurisdiction, there was no reason for Officer DeShaies to believe that it was not issued by a judicial officer upon probable cause or was otherwise invalid. *See, e.g.*, *United States v. Martin*, 399 F.3d 879, 881 (7th Cir. 2005) (holding that police guarded against making unreasonable seizure on basis of an arrest warrant by checking to see whether the charge remained unresolved); *see also Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 928 (9th Cir. 2001) ("There is a long line of cases from this and other circuits that an 'NCIC hit,' although not definitive in terms of conviction, 'has been routinely accepted in establishing probable cause for a valid arrest.'") (citation omitted). The Defendant's identifying information matched the identifying information in the warrant entry, and the warrant was still active. In fact, the Defendant's own statements acknowledged that he was aware of the warrant and was the person named in the warrant. Furthermore, contrary to the Defendant's argument, the age of the warrant would not have suggested to Officer DeShaies that it was no longer valid because an arrest warrant typically does not require execution within a specified period of time to avoid becoming stale. *See United States v. Watson*, 423 U.S. 411, 451 (1976) (stating that it is "virtually impossible for probable cause to become stale between procurement and arrest").[4] Officer DeShaies believed, reasonably, that the Defendant's speeding and circuitous driving, suspicious behavior at the beginning of the stop, and nonresponsive

---

[4] Many of the arguments that the Government advances to support Officer DeShaies's reliance on the arrest warrant were argued to Judge William C. Lee in Cause Number 1:07-CR-100. In a Memorandum and Opinion issued on April 17, 2009, Judge William C. Lee stated that the Government's arguments related to the sufficiency of the arrest warrant to establish probable cause to arrest the Defendant were well taken. *See United States v. Boyce*, 2009 WL 1034775, at *4 (N.D. Ind. Apr. 17, 2009). Judge Lee had also concluded in a previous Memorandum and Opinion issued on August 20, 2008, that the officer had probable cause to arrest the Defendant as soon as he learned that he had an outstanding warrant against him. *United States v. Boyce*, 2008 WL 3914984, at *5 (N.D. Ind. Aug. 20, 2008).

answers regarding his address were consistent with a person trying to evade an active arrest warrant. The Defendant argues that Officer DeShaies could not reasonably believe that the warrant provided probable cause because a message in a miscellaneous field on his computer screen indicated that the issuing agency was not willing to extradite outside of California, and he knew that the Allen County Jail would not accept a prisoner on an out-of-state warrant if the state that issued the warrant was not willing to extradite the suspect. But Officer DeShaies testified that, because an agency can change what it decides to do with a warrant, officers are required to confirm extradition of warrants with the issuing jurisdiction regardless of what is noted in the miscellaneous field. An Allen County Sheriff's Department data control specialist responsible for administering warrant in the NCIC local system verified that the issuing jurisdiction does not necessarily follow such geographical limitations and has the option and discretion to modify the limitations in response to a hit confirmation request.[5] In addition, the Jail's booking procedures as it related to extradition do not impact the validity of an arrest

---

[5] In *People v. Thompson*, 793 P.2d 1173, 1176 (Colo. 1990), the Supreme Court of Colorado held that "no extradition" language in a fugitive warrant did not invalidate an out-of-state warrant, was not a matter of constitutional magnitude, and did not otherwise invalidate the defendant's arrest. The court reasoned that
> [t]he decision to extradite is often an administrative determination, taking into consideration the seriousness of the offense and the cost of extradition. For example, it is not unusual for a state to decline extradition after a fugitive has been arrested. Note, *Extradition Computer Technology and the Need to Provide Fugitives With Fourth Amendment Protection In Section 1983 Actions*, 65 Minn.L.Rev. 891 (1981). The demanding state may terminate extradition proceedings at any time prior to the return of the prisoner. *See Massey v. Wilson*, 199 Colo. 121, 124, 605 P.2d 469, 471 (1980). This action by the demanding state, however, does not invalidate the arrest of the fugitive in the asylum jurisdiction.

*Thompson*, 793 P.2d at 1176. This Court agrees that extradition issues are separate from issues related to probable cause to arrest an individual named in a valid warrant. Administrative determinations pertaining to extradition are not solely dispositive as to the reasonableness inquiry under the Fourth Amendment.

warrant or speak to the Fourth Amendment probable cause analysis. *See, e.g.*, *United States v. Frank*, 8 F. Supp. 2d 284, 300 (S.D.N.Y. 1998) ("Although the question whether an arrest was authorized by a state's extradition law may be one indication of reasonableness, it is by no means dispositive."). Although the Jail ultimately did not hold the Defendant on the arrest warrant because the extradition confirmation was pending further approval from prosecutors in California, the warrant remained valid. Jail policy may require confirmation that the issuing agency is willing to extradite, but it does not mean that detaining the Defendant in the circumstances of this case violated his Constitutional rights. The fact that the Jail did not hold him on the warrant did not negate any probable cause that existed at the time Officer DeShaies took the Defendant into custody.

Officer DeShaies was going to keep the Defendant in custody while he confirmed whether California wanted to extradite him on the warrant, a process that could take up to an hour. "[S]earching a person about to be held for an indefinite period of time" is justified by "the need to protect [officers] and preserve evidence." *Jackson*, 377 F.3d at 717. In *Jackson*, the officer detained an individual in the back of his police cruiser when he could not produce a driver's license during a traffic stop. Judge Easterbrook explained for the court that

> [i]t would have been foolhardy to trundle Jackson into the squad car without ensuring that he was unarmed. [The officer] was entitled to reduce danger to himself before securing Jackson in the back seat for however long it took to find out who he really was. Likewise [the officer] was entitled to preserve any evidence that Jackson may have been carrying. That the search turned up drugs rather than a gun (or bogus identification) does not make it less valid.

377 F.3d at 717–18. Likewise, Officer DeShaies was going to detain the Defendant for an indefinite period of time and was entitled to ensure that the Defendant did not have any weapons or instrumentalities of escape and to preserve any evidence just as he would incident to an arrest.

That his search turned up drugs did not make it any less valid.

Even taking the approach that Judge Ripple took in dissent in *Jackson*, the Court would find the search lawful. Judge Ripple stated that the key question in the case was the type of detention the officer subjected the defendant to while investigating his identity. 377 F.3d at 718. Judge Ripple stated that the officer's stated intentions regarding the detention, although not relevant to whether probable cause existed, were a factor to consider in assessing whether a reasonable person in the defendant's circumstances would conclude that he was under arrest. *Id.* Judge Ripple decided that, considering the officer's statement that the defendant was not under arrest, his indication that the detention was going to be brief, and the fact that the defendant was not going to be transported to police headquarters for booking, the detention did not amount to a full custodial arrest but, instead, had all the markings of a *Terry* stop. Therefore, according to Judge Ripple, the officer's search should have been analyzed in light of *Terry* and *Minnesota v. Dickerson*. *Id.* at 718–19.[6]

Here, the facts point to a full custodial arrest. Officer DeShaies communicated to the

---

[6] In *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993), the Supreme Court reiterated the settled law that a protective search authorized under *Terry* must be strictly limited to that which is necessary for the discovery of weapons and which might be used to harm officers or others nearby, and that if the search exceeds these bounds, it is no longer valid and its fruits will be suppressed. 508 U.S. at 373. The question decided in *Dickerson* was that police can lawfully seize nonthreatening contraband that they detect during a protective patdown as long as their search stays within the bound marked by *Terry*. *Id.* This includes contraband that police discover through the sense of touch, as long as the contour and mass of an object makes its identity immediately apparent. *Id.* at 375–76 (using the practical considerations that inhere in the plain-view context to justify seizure of contraband that is detected through the sense of touch during a patdown for weapons). Because the officer in *Dickerson* made no claim that he suspected that a small, hard, object wrapped in plastic that he felt in the defendant's pocket was a weapon, and only recognized the lump as crack cocaine after he squeezed, slid, and otherwise manipulated the contents of the pocket, his search overstepped the bounds of a lawful search for weapons. *Id.* at 377–78 (holding that the officer's "continued exploration of the [defendant's] pocket after having concluded that it contained no weapon" exceeded beyond the sole justification for the search, which was to protect the police and bystanders). The Defendant in this case also relies on *Dickerson*.

Defendant that he was taking him into custody on the warrant and was required to complete the process for confirming whether California wanted to extradite him regardless of the Defendant's statement that California did not want to extradite. At no point did Officer DeShaies indicate to the Defendant that he would be free to leave. Officer DeShaies did not intend to allow the Defendant to get back in his car and drive away given the clear indication that he could be a fugitive. Rather, he handcuffed him, placed him in the back of his squad car, and took measures to tow the car in anticipation of the Defendant's arrest. All indications were that, even without the discovery of the drugs, the Defendant was not being briefly detained, but was going to be transported to jail for booking. In fact, even before Officer DeShaies received notice that the confirmation was being printed at the jail, he had already included the California arrest warrant with the Defendant's booking information. It was only later that the Jail declined to hold him for the warrant. A reasonable person in the Defendant's circumstances would conclude that he was under arrest.[7]

Absent the patdown and removal of the drugs from the Defendant's pocket, Officer DeShaies would have nevertheless discovered the drugs inside the car. The Defendant was going to be detained and transported to the police station to await confirmation regarding the warrant and extradition. The Defendant would not have been allowed to drive his car and a tow inventory would have been completed. An inventory search incident to towing a vehicle is lawful if

---

[7] Even if the confirmation was required to effectuate a formal arrest, the search would be lawful. In *Rawlings v. Kentucky*, 448 U.S. 98, 110–11 & n.6 (1980), the Supreme Court stated that it was not "particularly important that the search preceded the arrest rather than vice versa" where the "formal arrest followed quickly on the heels of the challenged search" and the fruits of the search were not necessary to support probable cause to arrest the petitioner. *See also United States v. Ochoa*, 310 Fed. Appx. 532, 535, 2007 WL 1224024, at * 3 (7th Cir. Apr. 25, 2007) (stating that "a search that occurs immediately before a lawful arrest is deemed to be incident to that arrest so long as probable cause for the arrest arose independently of the items seized").

conducted pursuant to standard police procedures aimed at protecting the owner's property and protecting the police from liability. Any evidence that would inevitably been discovered through such an inventory search prior to towing the vehicle is admissible. *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005); *see also United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010) (stating that even if the evidence discovered inside the defendant's truck was illegally seized, it did not need not be suppressed because it would have undoubtedly been discovered when the defendant was taken into custody and his truck, in all likelihood, towed and inventoried).

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress [ECF No. 19] is DENIED. A Final Pretrial Conference is scheduled for Thursday, April 28, 2011, at 3:00 PM. The Court will initiate the call. A Trial in this matter is scheduled to begin on Tuesday, May 10, 2011, at 8:30 AM before Judge Theresa L. Springmann.

SO ORDERED on March 21, 2011.

                                              s/ Theresa L. Springmann
                                              THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT